# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs September 7, 2011

## STATE OF TENNESSEE v. MAJID FARRAJ

**Direct Appeal from the Criminal Court for Shelby County**
**No. 08-07765     W. Otis Higgs, Jr., Judge**

**No. W2009-02566-CCA-R3-CD  - Filed October 6, 2011**

The defendant, Majid Farraj, pled guilty to theft of property valued between $10,000 and $60,000, a Class C felony, and was sentenced as a Range I offender to five years in the workhouse. On appeal, the defendant challenges the trial court's denial of his request for probation. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and JEFFREY S. BIVINS, JJ., joined.

John L. Dolan, Jr., Memphis, Tennessee, for the appellant, Majid Farraj.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; William L. Gibbons, District Attorney General; and Stephen P. Jones, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The facts presented by the State at the guilty plea hearing reveal that the defendant, an employee of a Target store in Memphis, removed $25,495 cash from the store's safe, without authorization, on August 8, 2008, and went to a casino in Tunica, Mississippi, and gambled. After gambling for a period of time, the defendant left the casino and returned to Shelby County where he purchased an automobile and a firearm using some of the stolen cash. He evidently left Shelby County and traveled to Putnam County where a law enforcement officer found him sleeping in his vehicle at a closed gas station. A subsequent search of the defendant's vehicle revealed $18,458 in cash and $5,000 in casino chips, as

well as various items of the defendant's personal property, including a firearm, a bulletproof vest, a ski mask, 200 rounds of ammunition, gloves, and clothes. The defendant gave a statement to a state trooper admitting to the theft. The defendant pled guilty to theft of property valued between $10,000 and $60,000 with the sentence to be determined by the trial court following a hearing.

At the sentencing hearing, James Ford, an investigator for the Target Corporation, testified that, in August 2008, he learned that a Target store in Shelby County was missing $25,495 in cash from its safe. Ford reviewed the surveillance footage, which showed the defendant "opening up the safe, taking money out, putting it in a duffle bag and leaving the building." Ford said that the defendant was one of the store managers at the time.

Ford testified that Target had not had its money returned at the time of the sentencing hearing even though he had heard that some of the money was recovered when the defendant was captured. He said that the defendant made no attempt to return the money prior to his arrest. Ford related that, in addition to the money stolen by the defendant, Target incurred an expense of $3,455 to change the locks in the store. The parties agreed that the amount of restitution owed by the defendant, after factoring in the money that had been recovered, was $8,910.

Detective Brad Less of the Shelby County Sheriff's Department testified that he received information from law enforcement in Putnam County that they had the defendant in custody and that he had possibly been involved in a robbery at a Target store. Detective Less and another officer traveled to Putnam County and attempted to interview the defendant, but the defendant invoked his rights. The items found in the defendant's possession included: a ski mask, a firearm, a bulletproof vest, approximately 200 rounds of ammunition, approximately $18,000 in cash, and $5,000 in casino chips. The officers deducted that the defendant had made a trip to a casino and purchased a tan Chevrolet Suburban and a firearm at Gossett Motors within 24 hours of the theft from Target. Detective Less said that the suburban was purchased for $3,500 in cash. Detective Less stated that the defendant's taking money from Target was a theft, and his investigation did not turn up any evidence that the defendant committed any robberies.

The defendant testified that he "obviously [had] a gambling problem" and admitted that he gambled with some of the stolen money, claiming to have "won money." He admitted to buying a vehicle and a firearm with cash, either from his gambling winnings or his theft. With regard to the items found in his possession, the defendant claimed that the ski mask belonged to his "little son," who gave it to him to put in his bag "for whatever reason." He said that the bulletproof vest was something that he had found in a store he had managed many years earlier, and his teenaged son had asked him to take it to guard against

ricocheting bullets while practicing shooting a gun.

The defendant testified that he left town after the theft to visit in New York his ex-girlfriend, with whom he hoped to mend the relationship. He acknowledged that he was upset at his ex-girlfriend and that she had obtained a restraining order against him. The defendant denied that he was traveling to New York with a vehicle purchased for cash, a gun, ammunition, bulletproof vest, and ski mask to harm his ex-girlfriend because she would not reconcile with him. The defendant denied any prior criminal activity and noted that he had already obtained new employment in Ohio where he was living with his long-time girlfriend. He said that the theft from Target was the first time he had stolen from his employer.

After hearing some argument from the parties, the court continued the hearing to give the parties time to submit arguments regarding the defendant's eligibility for diversion or probation and give the court time to research the issue. When the hearing reconvened, the court started by noting the offense class and range of punishment. The court reviewed its history with sentencing and the trend toward probation in lieu of incarceration. The court expressed its belief that probation was currently "taken so lightly" and noted an example of an individual recently given probation who violated it.

The court stated that it wanted to be fair to the defendant but that it was troubled by the case because of the items the defendant had in his car. The court expressed that it did not believe the defendant's explanation for how he came to have a bulletproof vest, firearm, and ski mask in his possession when he was arrested. The court noted that it was "concerned about the signal that we would send out to this community if a man was placed on probation who had a substantial amount of cash, rounds and rounds of ammunition, a vehicle, a ski mask, [and a] bullet proof vest . . . like [the defendant was] getting ready to start a war[.]" The court opined that giving someone probation, who was found with the items that were in the defendant's possession, would send a negative message with regard to deterrence. The court expressed that even though the defendant was a first offender, it was "troubled by these facts" and concerned about the defendant's intentions with the items found in his possession. Accordingly, the trial court denied probation and sentenced the defendant to five years in the workhouse. Likewise, with regard to diversion, the court found that "these are the kind of facts that shouldn't be concealed by diversion[.]"

## ANALYSIS

On appeal, the defendant challenges the trial court's denial of probation. When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made

by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2006). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000).

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statistical information provided by the administrative office of the courts as to Tennessee sentencing practices for similar offenses, (h) any statements made by the accused in his own behalf, and (i) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210 (2010); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2010), Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169.

Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. State v. Carter, 254 S.W.3d 335, 347 (Tenn. 2008) (citing Tenn. Code Ann. § 40-35-102(6) (2006)). Instead, the advisory sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D, or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6) (2010).

A defendant shall be eligible for probation, subject to certain exceptions, if the sentence imposed on the defendant is ten years or less. Tenn. Code Ann. § 40-35-303(a) (2010). A defendant is not, however, automatically entitled to probation as a matter of law. The burden is upon the defendant to show that he is a suitable candidate for probation. Id. § 40-35-303(b); State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

There is no bright line rule for determining when a defendant should be granted probation. Bingham, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis. Id. Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. Goode, 956 S.W.2d at 527. Also relevant is whether a sentence of probation would unduly depreciate the seriousness of the offense. See State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997); Bingham, 910 S.W.2d at 456.

A trial court may deny alternative sentencing and sentence a defendant to confinement based on any one of the following considerations:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1) (2010).

The defendant argues that he should have been granted probation because he had no felony record; he was charged with a property crime against a business rather than an individual; he had a long history of steady employment; and some restitution had been made since a portion of the money was found in his possession when he was arrested. The State counters that the defendant's contentions are without merit.

We conclude that the record supports the denial of probation. The circumstances surrounding the defendant's arrest were "troubl[ing]" to the trial court in that the defendant was captured in a vehicle purchased with cash, a ski mask, a bulletproof vest, a firearm, and enough ammunition to "start a war" on the way to visit his estranged girlfriend who had an order of protection against him. In addition, the circumstances of the underlying offense, although the defendant's first, were in no way minor in that he abused a position of trust to steal over $25,000 from his employer. Moreover, the defendant expressed no remorse or accepted responsibility for his actions, instead he rationalized his behavior by saying he "obviously" had a gambling addiction although there was no proof of such aside from the instance following the theft. A defendant's failure to accept responsibility for his or her

criminal conduct reflects poorly on rehabilitative potential and is a basis for the denial of probation. See State v. Zeolia, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996). Furthermore, the court explicitly found that it did not believe the defendant's testimony about how he came to have a bulletproof vest and ski mask in his possession at the time of his arrest. "Candor [with the court] is a relevant factor in assessing a defendant's potential for rehabilitation, and the lack of candor militates against the grant of probation." State v. Souder, 105 S.W.3d 602, 608 (Tenn. Crim. App. 2002) (citations omitted).

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE